## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JERMAINE CRADDOCK, # R-69423, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 16-cv-0607-NJR** |
| | ) | |
| KIM BUTLER, LORI OAKLEY, | ) | |
| JUSTIN SNELL, C/O BERNER, and | ) | |
| OFFICER DUNN, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Jermaine Craddock, an inmate currently incarcerated at Stateville Correctional Center ("Stateville"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. His complaint alleges harms that occurred at Menard Correctional Center ("Menard"). Specifically, Plaintiff claims that the defendants violated his Eighth Amendment rights by failing to protect him from harm at the hands of other inmates. Plaintiff also claims that a defendant violated his First Amendment[1] rights by failing to respond to his grievance, which sought damages from the institution. Plaintiff specifically indicates that he is suing the named defendants in their individual capacities. Those defendants are: Kim Butler (warden), Lori Oakley (grievance officer), Justin Snell (officer), Berner (officer), and Dunn (supervising officer).

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has failed to

---

[1] Plaintiff labels a failure to respond claim against Defendant Oakley as a First Amendment violation, however, he does not explain how the First Amendment provides a viable legal theory for failure to respond. The Fourteenth Amendment is the more common framework for a failure to respond claim, so this Court will view his claim against Oakley through that paradigm.

state a claim against defendants Snell, Berner, Butler, or Dunn because he has not identified a specific serious risk that they failed to address, and supervisory liability does not exist under § 1983. Second, as to Defendant Oakley, the First Amendment claim will be dismissed for failure to state a claim upon which relief may be granted because there is no protected interest in the prison grievance procedure.

### **Background**

On June 24, 2013, Plaintiff was physically attacked by his cellmate and suffered injuries while housed in the west cell house at Menard.[2] Following that attack, Plaintiff received medical care and briefly resided in segregation before being moved to the east cell house. Plaintiff lived in the east cell house for approximately a year without incident, until one day during the lunch hour when Officer Berner locked Plaintiff and his cellmate in their cell without explanation. Officer Berner refused to tell Plaintiff why he locked the two inmates in the cell, but Plaintiff eventually learned from guards on the next shift that he had been locked in his cell due to the guards learning that half of the inmates in the east cell house wanted to attack him. The next day, Plaintiff was moved to the west cell house.

Upon arrival at the west cell house, Plaintiff spoke with Officer Snell about his personal safety concerns. Snell was familiar with Plaintiff's history of being attacked in the west cell house, and he assured Plaintiff that his concerns would be addressed. Plaintiff resided in the west cell house without incident for about two months. Then, on July 2, 2014, the inmates were returning from the recreation yard when unidentified prisoners attacked Plaintiff from behind while entering the west cell house. A guard quickly separated Plaintiff and another inmate,

---

[2] The attack on June 24, 2013, is the subject of another § 1983 lawsuit currently pending before this Court (S.D. Ill., CM/ECF, Case No. 15-cv-0564-NJR-DGW). In that lawsuit, Plaintiff claims that the guards failed to protect him from an attack by his cellmate, despite his repeated pleas for help in the days leading up to the attack (*Id.* Doc. 1, p. 4).

placing them in cages. An officer walking by Plaintiff's cage commented, "they pickin on you again!" (*Id.* at 4).

Plaintiff was taken to the prison's protective custody housing unit where he received treatment for his minor injuries (*Id.* at 5). Plaintiff independently spoke to the warden and the assistant warden about his safety concerns, and he formed the belief that he should transfer to another institution for safety purposes. He believes that the warden and assistant warden helped to facilitate this transfer, which occurred about four months after the July 2 attack.

Plaintiff alleges that neither Officer Berner, nor Berner's supervisors, ever informed him of the danger he was in, thus leaving him susceptible to attack (*Id.*). He claims that the warden and Officers Snell, Berner, and Dunn acted with deliberate indifference to his safety.

With regard to Defendant Oakley, Plaintiff claims that she failed to properly address his grievance for damages stemming from an attack he suffered in 2013 (the attack that is the subject of his other lawsuit) (*Id.*). Plaintiff alleges that he submitted a number of administrative grievances with regard to the attack, and that the grievance seeking damages was the only one that went unanswered. He submitted a follow-up grievance and similarly received no response. Based on the non-response, he alleges that Oakley violated his constitutional rights.

<u>**Discussion**</u>

Based on the allegations, the Court finds it convenient to divide the *pro se* complaint into the following enumerated claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:**      Eighth Amendment failure to protect claim against defendants related to an attack on July 2, 2014; and

**Count 2:**      Fourteenth Amendment failure to respond to a grievance claim against Defendant Oakley related to a June 2013 attack.

As discussed below, these claims are subject to dismissal for failure to state a claim upon which relief may be granted.

*Count 1*

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). Prison conditions that deprive inmates of basic human needs, such as inadequate nutrition, health, or safety, may constitute cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); s*ee also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In *Farmer v. Brennan*, 511 U.S. 825, 833 (1994), the United States Supreme Court held that "prison officials have a duty…to protect prisoners from violence at the hands of other prisoners." Not every risk of harm gives rise to a constitutional liability to protect. *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2011). Plaintiff must make a two-part showing: (1) that there was a serious risk of peril; and (2) that the liable individual easily could have done something to avert the risk, but did not do so. *Id.* A risk of harm is only serious if there is a strong likelihood that, absent action, harm will occur. *Id.*

In *Shields v. Dart*, the Seventh Circuit noted that a general risk of violence in a maximum security unit of a prison does not constitute a substantial risk of harm absent any additional evidence that the complaining party was in harm's way. 664 F.3d 178, 181 (7th Cir. 2011). In *Shields*, the plaintiff (a county jail inmate) was housed on a cell block with offenders known for having weapons. He notified guards of potential weapons (though a search of cells did not reveal any), a guard made a false comment about his gang allegiance, and he was subsequently attacked with a homemade shank. *Id.* The Seventh Circuit upheld summary judgment in favor of the

defendants, finding that the plaintiff did not show a risk of harm on the cell block, aside from his own attack, that put the guards on notice of a substantial risk of harm against him. *Id.* Thus, the Court concluded that Shields failed to show that there was a substantial risk of injury to him. *Id.*

Of course, not every harm caused by another inmate translates into constitutional liability for the corrections officers responsible for inmate safety. *Farmer*, 511 U.S. at 834. A plaintiff must also prove that prison officials were aware of a specific, impending, and substantial threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996) (noting that a jury was entitled to rely on evidence that a captain knew of a risk to an inmate and a pending transfer request, but failed to act on the request in finding that the captain failed to protect the inmate). A defendant's willingness to take affirmative steps to stop a dangerous situation is also relevant to whether that defendant showed deliberate indifference. *See Shields*, 664 F.3d at 181 (noting that a guard was not required to personally intervene in a fight and could take sufficient action by calling for back up).

Here, Plaintiff's failure to protect claim must be analyzed individually for each defendant, because each defendant bears a different level of responsibility to protect an inmate based on his or her role in the prison setting. First, Plaintiff alleges that Officer Berner failed to protect him from danger by declining to tell him why he arbitrarily locked Plaintiff and his cellmate in their east cell house cell during lunch time one day. Plaintiff asserts that this denial of information endangered him, especially because he eventually learned from officers on the next shift that Berner had locked him in to protect him from the threat that half of the cell house allegedly wanted to beat him up. Plaintiff alleges that following the brief lock-in by Berner, he was transferred to the west cell block the next day. He does not report that Berner had any interaction with him at the west cell block, though he generally asserts the west block was known

as dangerous to him after he was attacked in that block in 2013. Plaintiff's allegations against Berner are insufficient to support a claim for failure to protect against Berner, because Plaintiff does not identify a specific and serious threat that Berner deliberately failed to address.

If anything, it appears that Berner learned of a risk to Plaintiff's safety and took steps to protect him by putting him on lock-in during a lunch hour. Immediately following the lock-in, Berner presumably played a role in having Plaintiff transferred for his safety. The record does not contain any information that at the time of the transfer Berner knew the west cell block was dangerous, or that Berner was aware of any *specific* threats to Plaintiff. Given the lack of *specific* threats, and the fact that Berner appears to have participated in *protecting* Plaintiff from an attack in the east cell block, the claim against Berner will be dismissed with prejudice for failure to state a claim. *See Shields*, 664 F.3d at 181, *Pope*, 86 F.3d at 92.

Next, as to Officer Snell, Plaintiff claims that immediately upon being relocated to the west cell block—the site of his 2013 attack by a cellmate—he spoke with Officer Snell about safety concerns. Plaintiff alleges that Snell was aware of his history in the cell block and that Snell said he would take care of things. According to Plaintiff, about two months passed without incident. Plaintiff does not report any specific threats during those two months, and he does not claim that he submitted grievances or requests to move for his safety during that time period. Then, seemingly out of the blue, Plaintiff was attacked one day when returning from recreation time. Plaintiff alleges that an unidentified guard immediately broke up the fight. While in a holding cell, another guard passed by and commented that inmates were after him again.

The facts alleged by Plaintiff are insufficient to state a claim for failure to protect against Snell, because Plaintiff does not show that he was under any specific threat of harm when he relocated back to the west cell block. It is true that the block was the scene of his initial beating

in 2013, but there was no indication that there was a latent threat to him in that block. He does not claim that he was housed with or near his previous abuser, and he does not claim he was specifically aware that other inmates had it out for him. There is no doubt that he could have been legitimately afraid to move back to that block, and he did raise that fear with Officer Snell, but he lacks evidence that Officer Snell knew of a specific ongoing threat to his safety and did nothing about it. *See Shields*, 664 F.3d at 181 (a general threat in a cell block is not enough to state a failure to protect claim).

Taking all of the facts together, it seems that the guards at Menard were in tune to various risks to Plaintiff, and they took affirmative steps to protect him by moving him from block to block. After his first attack (in June 2013) they moved him, and after his second attack (in July 2014) he believes that they helped him to secure a transfer to a different institution. In light of the lack of clear or specific threats leading up to the second attack, and in light of the general appearance that Defendants were acting to protect his safety, there are not sufficient factual allegations for a failure to protect claim to proceed against Officer Snell. *See Pinkston*, 440 F.3d at 889; *Shields*, 664 F.3d at 181.

Next, as to Warden Butler and Dunn, Plaintiff has failed to state a claim for failure to protect for two reasons. First, he has not alleged any facts indicating that either of these individuals was personally aware of any risk against him. A claim for failure to protect may only be established where a plaintiff is able to show that the defendant was personally aware of a risk and acted with deliberate indifference towards that risk. *Pinkston*, 440 F.3d at 889; *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001). Second, to the extent that Plaintiff argues these individuals are responsible for failing to supervise officers Berner or Snell, his claim must fail because there is no supervisory liability under § 1983. *Sanville,* 266 F.3d at 740. Thus, the claims

against Defendants Warden and Dunn must be dismissed with prejudice for failure to state a viable claim.

In sum, Plaintiff's claims for failure to protect must be dismissed as to all defendants because he failed to show that they were aware of a specific risk to him, or that they purposefully ignored that risk, putting him in harm's way. It is unfortunate that Plaintiff suffered an attack, but it appears that the guards were making attempts to protect him by moving him to various cell blocks during his time at Menard. Ultimately, when Plaintiff suffered a second attack despite the defendants' protective measures, he believes that they facilitated his transfer to another facility for safety purposes. This assistance belies the notion that they were deliberately failing to protect him. Accordingly, Count 1 for failure to protect is dismissed with prejudice against all defendants.

### Count 2

Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Put differently, the fact that defendants may have ignored Plaintiff's grievances does not give rise to a due process claim against them. Plaintiff does allege that Oakley responded to some of his grievances about his 2013 assault, but for whatever reason did not respond to the grievance seeking damages. Despite this allegation, Oakley did not participate in the underlying conduct—the assault—and there is no specific liberty interest in the grievance process, so she cannot be held liable for a failure to respond. *Id.* Also, to the extent Plaintiff seeks compensation for his 2013 assault, he still has a case pending before this Court regarding that assault. The Court expresses no opinion on the merits of that

case, but does note that it is a potential ongoing avenue for recovery. Accordingly, **Count 2** fails and shall be dismissed with prejudice.

### Disposition

For the reasons set forth above, this action is **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted. This dismissal counts as a strike for purposes of 28 U.S.C. § 1915(g), because the complaint fails to state a claim upon which relief may be granted.

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

The Clerk shall **CLOSE THIS CASE** and enter judgment accordingly.

### Notice

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion

to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion must be filed within twenty-eight (28) days of the entry of judgment, and the deadline cannot be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma*

*pauperis* ("IFP motion"). *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:  July 21, 2016**

**NANCY J. ROSENSTENGEL**
**United States District Judge**